IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-531

Filed: 6 March 2108

Wake County, No. 14 CVS 15229

DONNIE L. GOINS and JACKIE KNAPP, Plaintiffs,

v.

TIME WARNER CABLE SOUTHEAST, LLC, and WAKE ELECTRIC MEMBERSHIP CORPORATION d/b/a WAKE ELECTRIC, Defendants.

Appeal by Defendant from judgment entered 8 August 2016 and order entered 30 September 2016 by Judge Elaine M. O'Neal in Wake County Superior Court. Heard in the Court of Appeals 16 October 2017.

> *Martin & Jones, P.L.L.C., by H. Forest Horne and Huntington M. Willis, for the Plaintiffs-Appellees.*

> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Thomas M. Buckley and Joshua D. Neighbors, for the Defendant-Appellant.*

DILLON, Judge.

Donnie L. Goins and Jackie Knapp (together, "Plaintiffs") brought this action seeking damages sustained when they each (at different times) collided with a utility line owned by Time Warner Cable Southeast, LLC, ("Defendant") that was lying at ground level in a public roadway. The jury found that Defendant was negligent and that neither Plaintiff was contributorily negligent. Defendant appeals from the trial court's judgment entered based on the jury's verdict and from the trial court's

subsequent denial of its Motion for Judgment Notwithstanding the Verdict ("JNOV").

We agree with Defendant that, based on our jurisprudence, the trial court committed

reversible error by instructing the jury on the sudden emergency doctrine, an

instruction which provided a theory by which the jury could determine that neither

Plaintiff was contributorily negligent. Specifically, there was no evidence to support

the instruction. Accordingly, we vacate the judgment entered by the trial court and

remand the matter for a new trial.

## I. Background

The evidence presented at trial tended to show the following:

On 11 January 2014, severe weather caused a utility line belonging to

Defendant to fall from its poles. That same day, Defendant was notified of the fallen

line.

The following morning, Donnie Goins ("Plaintiff Goins") was cycling and was

severely injured when his front tire made impact with the line, which was still lying

in the roadway. A short time later, Jackie Knapp ("Plaintiff Knapp") was cycling

when a cyclist directly in front of her struck the wire and wrecked. Plaintiff Knapp

was unable to stop before colliding with him, resulting in a pile-up and causing

Plaintiff Knapp to sustain severe injuries.

A jury ultimately found Defendant responsible for both Plaintiffs' injuries, and the trial court entered judgment on the verdict and denied Defendant's subsequent motion for JNOV. Defendant now appeals.

## II. Analysis

Defendant contends that the trial court erred in two respects. First, Defendant argues that the trial court should never have allowed the issue of Plaintiff Knapp's contributory negligence to reach the jury, contending that Plaintiff Knapp was contributorily negligent as a matter of law. Second, Defendant argues that a jury instruction regarding the doctrine of sudden emergency was not warranted in this case. We address each argument in turn.

## A. Plaintiff Knapp's Contributory Negligence

In its first argument, Defendant challenges the trial court's denial of its JNOV as to Plaintiff Knapp, contending that Plaintiff Knapp was contributorily negligent as a matter of law for cycling too closely to the cyclist in front of her before she was injured. Therefore, Defendant argues, the issue of Plaintiff Knapp's contributory negligence should never have gone to the jury.[1] We disagree.

"[A] directed verdict [or a JNOV] for [the moving party] on the ground of contributory negligence may only be granted when the evidence taken in the light

---

[1] We note here that Defendant's contentions on appeal regarding the contributory negligence of Plaintiffs focuses solely on Plaintiff Knapp. Whether it was proper for the jury to review any negligence on the part of Plaintiff Goins is not before us on appeal.

most favorable to [the non-moving party] establishes the [non-moving party's] negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom." *Clark v. Bodycombe*, 289 N.C. 246, 251, 221 S.E.2d 506, 510 (1976). Decisions regarding motions for directed verdict and JNOV are questions of law, to be reviewed *de novo*. *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 267 (2013).

Defendant contends that the only reasonable conclusion to be drawn from the evidence in this case is that Plaintiff Knapp was negligent *per se*, and that the trial court should have granted its summary motions on the issue. Specifically, Defendant claims Plaintiff Knapp's actions fall within the purview of Section 20-152(a) of our General Statutes, in that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." N.C. Gen. Stat. § 20-152 (2015). It is true that a violation of the statute amounts to negligence *per se*. *See Ratliff v. Duke Power Co.*, 268 N.C. 605, 612, 151 S.E.2d 641, 646 (1966).

However, our Supreme Court has repeatedly held that a rear-end collision by a following vehicle is mere evidence that the driver may have been following too closely, and such is a question of fact for the jury. *See Beanblossom v. Thomas*, 266 N.C. 181, 188-89, 146 S.E.2d 36, 42 (1966); *Fox v. Hollar*, 257 N.C. 65, 71, 125 S.E.2d 334, 338 (1962).

We hold that the issue of Plaintiff Knapp's contributory negligence was one for the jury. There is a question as to whether Plaintiff Knapp was following the cyclist in front of her too closely. Furthermore, assuming she was following too closely, there is a question as to whether this negligence proximately caused her injuries. That is, the jury could have determined from the evidence that Plaintiff Knapp would have hit the wire and been injured anyway even if no one was in front of her.

The evidence presented to the jury was not such that the only reasonable conclusion to be drawn was in favor of Defendant on the question of Plaintiff Knapp's contributory negligence, and we therefore find no error.

### B. Sudden Emergency

Defendant's second argument concerns the trial court's jury instruction regarding the doctrine of sudden emergency, to which it objected at trial. Specifically, Defendant contends that there was no evidence to support this instruction.

We review challenges regarding the appropriateness of jury instructions to determine, first, whether the trial court abused its discretion, *see Murrow v. Daniels*, 321 N.C. 494, 499-500, 364 S.E.2d 393, 396 (1988), and, second, whether such error was likely to have misled the jury. *Union Cty. Bd. of Educ. V. Union Cty. Bd. of Comm'rs* 240 N.C. App. 274, 290-91, 771 S.E.2d 590, 601 (2015). "[W]e consider whether the instruction [challenged] is correct as a statement of law and, if so, whether the requested instruction is supported by the evidence." *Minor v. Minor*, 366

N.C. 526, 531, 742 S.E.2d 790, 793 (2013).  For the reasons stated below, we agree

with Defendant that the evidence did not warrant the instruction and that the error

was prejudicial.

Our Supreme Court has explained that the doctrine of sudden emergency

excuses the actions of a party which may normally constitute negligence where the

party so acted *in response* to a sudden emergency which the party did not cause:

> The doctrine of sudden emergency is simply that one
> confronted with an emergency is not liable for an injury
> resulting from his acting as a reasonable man might act in
> such an emergency.  *If he does so, he is not liable for failure
> to follow a course which calm, detached reflection at a later
> date would recognize to have been a wiser choice.*

*Rodgers v. Carter*, 266 N.C. 564, 568, 146 S.E.2d 806, 810 (1966) (emphasis added*).*

The doctrine of sudden emergency applies only to conduct, alleged to be

negligent, that occurs *after* the emergency arises.  *See Carrington v. Emory*, 179 N.C.

App. 827, 830, 528 S.E.2d 532, 534 (2006) ("[A] sudden emergency arises in most, if

not all, motor vehicle collisions, but the doctrine of sudden emergency is applicable

only when there arises from the evidence . . . an issue of negligence by an operator

*after being confronted by the emergency.*"  (alteration in original) (emphasis added)).

In applying the doctrine,

> the jury is permitted to consider, in its determination of
> whether specific conduct was reasonable under the
> circumstances, that the actor faced an emergency.  It
> logically follows that in order for perception of an
> emergency to have affected the reasonableness of the

> actor's conduct, the [actor] *must have perceived the*
> *emergency circumstance and reacted to it.*

*Pinckney v. Baker*, 130 N.C. App. 670, 673, 504 S.E.2d 99, 102 (1998) (emphasis added).

In the present case, the trial court properly instructed the jury on Defendant's negligence, as there was evidence, taken in the light most favorable to Plaintiffs, that Defendant did not act reasonably in attending to its fallen utility line. Further, the trial court properly instructed the jury on Plaintiffs' contributory negligence, as there was evidence, taken in the light most favorable to Defendant, that Plaintiffs were traveling too fast and that they failed to keep a proper lookout, and that Plaintiff Knapp followed too closely to the cyclist in front of her.

However, over Defendant's objection, the trial court also instructed the jury on the doctrine of sudden emergency as a theory by which the jury could excuse Plaintiffs' behavior of traveling too fast or failing to keep a proper lookout, which normally might constitute contributory negligence. Defendant argues the trial court improperly instructed the jury on sudden emergency because the instruction was not supported by the evidence. We agree. As our Supreme Court has held, a motorist is not entitled to a sudden emergency instruction to excuse otherwise negligent behavior (e.g., failing to keep a proper lookout) where it is this otherwise negligent behavior that contributed to the emergency:

> A motorist is required in the exercise of due care to keep a reasonable and proper lookout in the direction of travel and is held to the duty of seeing what he ought to have seen. Where a motorist discovers, or in the exercise of due care should discover, obstruction within the extreme range of his vision and can stop if he acts immediately, but his estimates of his speed, distance, and ability to stop are inaccurate and he finds stopping impossible, he cannot then claim the benefit of the sudden emergency doctrine.

> The crucial question in determining the applicability of the sudden emergency doctrine is thus whether [the motorist], when approaching the [obstruction in the roadway], saw or by the exercise of due care should have seen that he was approaching a zone of danger. Did his failure to decrease his speed and bring his [vehicle] under control without first ascertaining the nature of the highway conditions ahead of him constitute negligence on his part which contributed to the creation of the emergency thereafter confronting him? The sudden emergency must have been brought about by some agency over which he had no control and not by his own negligence or wrongful conduct.

*Hairston v. Alexander Tank*, 310 N.C. 227, 239, 311 S.E.2d 559, 568 (1984) (citations omitted).

Plaintiffs contend the instruction was proper because "the emergency situation *was created by* the very negligence of [] [D]efendant giving rise to the cause of action, namely a dangerous hazard left in the roadway." (emphasis in original). Plaintiffs' argument misconstrues the sudden emergency doctrine. That is, assuming the jury determined that Plaintiffs failed to keep a proper lookout, Defendant's failure to remove the wire did not *cause* Plaintiffs' failure to keep a proper lookout or failure to travel at a safe speed. The doctrine of sudden emergency would apply if, for instance,

the Plaintiffs were keeping a proper lookout and then, suddenly, an outside agency, such as a car turning into their lane of traffic, caused them to swerve into the wire. In such a case, their action of swerving in a direction without first determining if there was an obstacle in that direction might be excused since their action of swerving was in response to a sudden emergency, i.e., the car turning into their lane of traffic.

In the present case there is no evidence that an outside agency caused them to fail to keep a proper lookout. For example, Plaintiff Knapp admitted she was unaware that a hazardous road condition existed and had no opportunity to "react" or attempt to avoid injury before colliding with the cyclist in front of her. Her testimony necessarily precludes application of the sudden emergency doctrine. Likewise, Plaintiff Goins testified he was simply traveling down a hill and then suddenly saw the wire in the road and did not have time to react. There was no evidence that any outside agency distracted them.

Accordingly, based on the evidence, the questions were (1) whether Defendant was negligent in failing to attend to its wire and (2) whether Plaintiffs were contributorily negligent in failing to perceive the wire. There was no evidence from which the jury should have been asked to determine whether Plaintiffs' failure to perceive the wire was caused by some sudden emergency.

Further, we are persuaded, if not compelled, by our Supreme Court's holding in *Rodgers v. Carter*, 266 N.C. 564, 146 S.E.2d 806 (1966) to conclude that the

instruction constituted *prejudicial* error likely to mislead a jury. In *Rodgers*, our Supreme Court held that it was prejudicial error for the trial court to instruct on sudden emergency where the evidence showed that a motorist seeking the instruction hit a child who ran into the road in his path, where there was otherwise no evidence of any prior emergency which caused the motorist to be distracted:

> The learned judge who presided at the trial of this action so instructed the jury [on the motorists' duty to keep a proper lookout], but he added to these instructions [his] remarks concerning the doctrine of sudden emergency, which were not applicable in view of the evidence presented and could have confused the jury as to the principle by which they were to be guided in reaching their verdict.

*Rogers*, 266 N.C. at 571, 146 S.E.2d at 812.

In the present case, it may be that the jury determined Plaintiffs were not contributorily negligent because they kept a proper lookout. Alternatively, it may be that the jury determined that either or both of the Plaintiffs were not keeping a proper lookout and/or were following too closely, but improperly determined that Plaintiffs were otherwise not contributorily negligent because they were confronted with the "sudden emergency" of a wire in their path which they could not avoid. Because there is a reasonable possibility that the latter occurred, we must conclude that the instruction on sudden emergency was prejudicial error.

III. Conclusion

We conclude that the trial court did not err in denying Defendant's JNOV motion. We conclude, however, that the trial court did commit prejudicial error by instructing the jury on the doctrine of sudden emergency. We vacate the judgment and remand the matter for a new trial consistent with these conclusions.

NEW TRIAL.

Chief Judge McGEE and Judge CALABRIA concur.